TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00047-CV






Sergeant Enterprises, Inc., Appellant


v.


Carole Keeton Strayhorn, Successor-in-Interest to John Sharp, Comptroller of Public

Accounts of the State of Texas and Greg Abbott, Successor-in-Interest to John

Cornyn and Dan Morales, Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. 96-15475, HONORABLE DAVID CAVE, JUDGE PRESIDING





O P I N I O N




 In this suit for a refund of franchise taxes, Sergeant Enterprises, Inc. ("appellant")
appeals from the grant of a summary judgment in favor of Carole Keeton Strayhorn, Comptroller of
Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively,
"Comptroller"). (1) In two issues, appellant asserts that the district court erred in granting the
Comptroller's motion for summary judgment and denying its own. Appellant urges that it
conclusively proved its entitlement to a refund by offsetting its 1995 franchise tax liability with the
business losses of a predecessor entity that appellant acquired through a merger in 1994. Holding
that, in calculating its net taxable earned surplus, appellant may not deduct the business losses of a
predecessor corporation that it acquired through a merger, we affirm the judgment of the district
court.


FACTUAL AND PROCEDURAL BACKGROUND


 Appellant is the surviving corporation of a two-tiered merger that occurred in 1994. 
Sergeant Oil & Gas, Inc. ("Oil & Gas") merged with SOG Acquisition, Inc., which in turn merged
with appellant. At the time of the mergers, Oil & Gas had a cumulative business loss of
approximately $954,854 for the years 1992 through 1994.

 Most Texas corporations, including appellant, are required to pay franchise taxes for
the privilege of doing business in Texas. See Tex. Tax Code Ann. ch. 171 (West 2002); (2) Universal
Frozen Foods Co. v. Rylander, 78 S.W.3d 588, 590 (Tex. App.--Austin 2002, no pet.). In 1995,
appellant paid franchise tax of $144,606.38. In March 1996, upon the advice of a tax consulting
firm, appellant filed an amended 1995 franchise tax return, deducting the $954,854 business loss of
Oil & Gas and requesting a refund of $42,968.43. The Comptroller denied the refund request, citing
its policy that a corporation may not transfer its business loss to another corporation by merger. See
Texas Comptroller of Public Accounts, STAR System No. 9610668H, at http://aixtcp.cpa.
state.tx.us/star.

 In December 1996, appellant sued the Comptroller in district court for a refund. See
Tex. Tax Code Ann. § 112.151 (West 2002). After a five-year period of no activity in the suit, the
case was placed on the dismissal docket. The district court granted appellant's unopposed motion
to reinstate, then both parties filed traditional motions for summary judgment. In December 2002,
the district court rendered final judgment, granting the Comptroller's motion for summary judgment
and denying appellant's motion. By two issues, appellant contends that the tax code allows the
surviving corporation after a merger to carry forward the business loss of the non-surviving
corporation as a deduction to offset franchise tax liability and accordingly that the district court erred
in granting summary judgment in favor of the Comptroller.


STANDARD OF REVIEW


 The standards for review of a traditional summary judgment are well established: the
movant must show there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law; in deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true; and the court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the
nonmovant's favor. See Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A plaintiff must establish all elements of the cause
of action as a matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979). A defendant, however, must disprove at least one essential
element of each of the plaintiff's theories of recovery or conclusively establish each element of an
affirmative defense to prevail. See Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282
(Tex. 1996). We review the trial court's decision to grant summary judgment de novo. Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).

 Generally, a party cannot appeal the denial of a motion for summary judgment
because it is an interlocutory order and thus not appealable. See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and
the district court grants one motion and denies the other, the unsuccessful party may appeal both the
grant of the prevailing party's motion and the denial of its own. See Holmes v. Morales, 924 S.W.2d
920, 922 (Tex. 1996). We will review the summary judgment evidence presented by both sides,
determine all questions presented, and render such judgment as the trial court should have rendered. 
FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000); Commissioners Court
v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). Because the district court did not state the basis for
granting summary judgment, the appellant must negate all grounds that support the judgment. State
Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 381 (Tex. 1993); Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989). If the appellant fails to negate each ground on which the judgment
may have been rendered, we must uphold the summary judgment. See Carr, 776 S.W.2d at 569.


ANALYSIS


 In its first issue, appellant contends that the tax code allows the surviving corporation
of a merger to carry forward the business loss of a non-surviving corporation as a deduction to offset
franchise tax liability. Appellant urges that the Comptroller's interpretation, that only the company
incurring a loss may take the business loss deduction, conflicts with the plain language of the
relevant statute. The section at the heart of this dispute provides for the deduction of business losses
as follows:


 For purposes of this section, a business loss is any negative amount after
apportionment. The business loss shall be carried forward to the year succeeding the
loss year as a deduction to net taxable earned surplus, then successively to the
succeeding four taxable years after the loss year or until the loss is exhausted,
whichever occurs first, but for not more than five taxable years after the loss year.



Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.09, 1991 Tex. Gen. Laws 160 (amended 1995,
2001) (current version at Tex. Tax Code Ann. § 171.110(e) (West 2002)).

 As a preliminary matter, appellant urges that because the imposition of a franchise
tax is a taxing statute rather than an exemption, it should be liberally construed in favor of the
taxpayer. Whether we characterize the tax as an imposition of tax or an exemption determines who
bears the burden of proving its application. Because the legislature enacts statutes imposing
franchise tax purely for revenue purposes, we liberally construe franchise tax statutes to effectuate
their purpose. Upjohn Co. v. Rylander, 38 S.W.3d 600, 606 (Tex. App.--Austin 2000, pet. denied)
(citing Federal Crude Oil Co. v. Yount-Lee Oil Co., 52 S.W.2d 56, 61 (Tex. 1932)). Statutes
imposing a tax must be strictly construed against the taxing authority and liberally construed in favor
of the taxpayer. Id. Deductions and exemptions, on the other hand, are strictly construed against
the taxpayer. See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d
894, 899 (Tex. 1991); accord Bullock v. National Bancshares Corp., 584 S.W.2d 268, 271-72 (Tex.
1979).

 The provision at issue in this case, section 171.110(e) of the tax code, expressly
authorizes a "deduction" of a business loss and is tantamount to an exemption. See Gables Realty
Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 872 (Tex. App.--Austin 2002, pet.
denied) (citing Texas Utils. Elec. Co. v. Sharp, 962 S.W.2d 723, 726 (Tex. App.--Austin 1998, pet.
denied)). Therefore, it must be strictly construed in favor of the Comptroller. Deductions being
matters of legislative "grace," Upjohn Co., 38 S.W.3d at 606 (quoting Commissioner v. Sullivan, 356
U.S. 27, 28 (1958)), appellant has the burden of clearly demonstrating that it is entitled to the
deduction. North Alamo Water Supply, 804 S.W.2d at 899.

 In further construing this statute, we are mindful of several rules of statutory
construction. Statutory construction is a question of law, which we review de novo. Texas Dep't
of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). We must ascertain and give effect to the
legislature's intent for the provision we are construing. See Fleming Foods v. Rylander, 6 S.W.3d
278, 284 (Tex. 1999); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994); Calvert
v. Texas Pipe Line Co., 517 S.W.2d 777, 780 (Tex. 1974). The legislature's intent should be
determined by reading the language used in the particular statute and construing the statute in its
entirety. See In re Bay Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 380 (Tex. 1998);
Taylor v. Firemen's & Policemen's Civil Serv. Comm'n, 616 S.W.2d 187, 190 (Tex. 1981). Further,
we should read every word, phrase, and expression in a statute as if it were deliberately chosen, and
presume the words excluded from the statute are done so purposefully. See Gables Realty Ltd.
P'ship, 81 S.W.3d at 873; City of Austin v. Quick, 930 S.W.2d 678, 687 (Tex. App.--Austin 1996)
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)), aff'd, 7 S.W.3d 109
(Tex. 1999); see also 2A Norman J. Singer, Sutherland Statutory Construction § 47.25 (6th ed.
2000) (stating that there is generally an inference that omissions from a statute are intentional).

 Furthermore, we give serious consideration to an agency's construction of a statute,
as long as the construction is reasonable and does not contradict the plain language of the statute. 
Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); see Ford Motor Co. v. Motor
Vehicle Bd., 21 S.W.3d 744, 762 (Tex. App.--Austin 2000, pet. denied). In ascertaining the scope
of an agency's authority, we give great weight to the contemporaneous construction of a statute by
the administrative agency charged with its enforcement. Tarrant Appraisal Dist., 845 S.W.2d at
823. We recognize that the legislature intends an agency created to centralize expertise in a certain
regulatory area "be given a large degree of latitude in the methods it uses to accomplish its regulatory
function." Reliant Energy, Inc. v. Public Util. Comm'n, 62 S.W.3d 833, 838 (Tex. App.--Austin
2001, no pet.) (citing State v. Public Util. Comm'n, 883 S.W.2d 190, 197 (Tex. 1994)).

 Application of these rules leads us to conclude that the Comptroller's interpretation
of the business loss deduction statute is correct.

 To put the parties' arguments in context, we turn first to the history of section
171.110. Since 1992, the major portion of a corporation's franchise tax has been based on its "net
taxable earned surplus." See Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 5, § 8.03, 1991 Tex. Gen.
Laws 153, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 394, § 10, 1999 Tex. Gen. Laws
2454, 2454-55 (current version at Tex. Tax Code Ann. § 171.002 (West 2002)). To calculate the
net taxable earned surplus, a corporation "shall" carry forward and deduct unused business losses
for five years after the year in which the loss occurred. Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch.
5, § 8.09, 1991 Tex. Gen. Laws 160 (amended 1995, 2001). Appellant contends that the phrase
"business loss shall be carried forward" mandates that appellant carry forward the loss of Oil & Gas. 
The Comptroller responds that earned surplus applies to "a corporation" and "the corporation,"
meaning the corporation that incurred the loss. Tex. Tax Code Ann. § 171.110(a), (a)(1) (West
2002).

 The Comptroller has employed this interpretation since late 1992. See, e.g., Texas
Comptroller of Public Accounts, STAR System No. 9308084L.2, at http://aixtcp.cpa.state.tx.us/star
(first letter ruling deciding the issue, Dec. 2, 1992). This interpretation stems from the concept of
"separate entity," under which each corporation is responsible for its own taxes. Id. ("[u]nder the
concept of separate entity, the business loss from a corporation can not be transferred to another
corporation as a result of a merger or other method of combining two corporations"); see Sunoco
Terminals, Inc. v. Bullock, 756 S.W.2d 418, 421 (Tex. App.--Austin 1988, no writ) ("[E]ach distinct
entity is responsible for paying franchise taxes. When two corporations merge, there remains only
one entity responsible for the tax."); Texaco, Inc. v. Calvert, 526 S.W.2d 630, 634 (Tex. Civ.
App.--Austin 1975, writ ref'd n.r.e.) (concluding that Texaco could not include gross receipts of its
subsidiaries as part of its gross receipts because "[t]o do so would ignore the fact of their separate
corporate existence").

 In 1996, the Comptroller incorporated its interpretation into an agency rule, to apply
retroactively to franchise tax reports originally due after January 1, 1992, that a "corporation may
not convey, assign, or transfer a business loss to another entity including, but not limited to, by
merger." 21 Tex. Reg. 879 (1995) (codified at 34 Tex. Admin. Code § 3.555(g)(3)) (Comptroller
of Pub. Accounts). In the 2001 legislative session, during the pendency of this litigation, the
legislature amended section 171.110(e) by adding the following language: "A business loss can be
carried forward only by the corporation that incurred the loss and cannot be transferred to or claimed
by any other entity, including the survivor of a merger if the loss was incurred by the corporation that
did not survive the merger." Act of June 15, 2001, 77th Leg., R.S., ch.1275, § 2, 2001 Tex. Gen.
Laws 3068 (codified at Tex. Tax Code Ann. § 171.110(e) (West 2002)).

 Appellant argues that it is entitled to deduct Oil & Gas's business losses because (i)
section 171.110(e) on its own terms allows one corporation to transfer its business loss to another
corporation; (ii) section 171.110(e), when read in tandem with section 5.06A(2) of the business
corporation act, allows the transfer of a business loss; see Tex. Bus. Corp. Act Ann. § 5.06A(2)
(West 2003); (iii) rule 3.555(g)(3) is invalid because it contradicts the plain meaning of section
171.110(e); see 34 Tex. Admin. Code § 3.555(g)(3) (2002); and (iv) the 2001 amendment to section
171.110(e) does not apply here. Finally, appellant proposes that Texas replace the long-standing
policy of taxing corporations as separate entities with the continuity of business doctrine, which
allows the transfer of a business loss after a merger. We will separately address each of appellant's
arguments.

 Appellant first contends that it is entitled to carry forward Oil & Gas's business loss
under the "plain language" of section 171.110(e) of the tax code. The Comptroller responds that
appellant may not carry forward the loss because section 171.110(e) does not affirmatively permit
a merger survivor to deduct the losses of a predecessor corporation. In our interpretation, we cannot
consider section 171.110(e) in isolation, but must consider how this section operates within the
franchise tax statute as a whole. See Sharp v. House of Lloyd, 815 S.W.2d 245, 249 (Tex. 1991) (in
determining meaning of statute, court must consider entire act, its nature, and its objects).

 Section 171.110 of the tax code sets forth the formula for calculating net taxable
earned surplus of a corporation. Tex. Tax Code Ann. § 171.110. Included in the calculation is the
deduction of a business loss, which "shall be carried forward to the year succeeding the loss year as
a deduction" until exhausted or for up to five successive years. Id. § 171.110(e) (emphasis added). 
This statute expressly designates a business loss as a deduction; when seeking a deduction, a
claimant has the burden of clearly demonstrating that it is entitled to the deduction. North Alamo
Water Supply, 804 S.W.2d at 899. Given that Texas taxes corporations as separate entities, see
Sunoco Terminals, Inc., 756 S.W.2d at 421; Texaco, Inc., 526 S.W.2d at 634, we cannot agree with
appellant that the phrase "shall be carried forward" necessarily mandates that a successor corporation
carries forward the business loss of its predecessor. When interpreting a statute, we must construe
it in a manner that is "not forced nor strained, but simply such as the words of the law in their plain
sense fairly sanction and will clearly sustain." Simmons v. Arnim, 220 S.W. 66, 70 (Tex. 1920). 
Mindful that the "tax code requires that a corporation's net taxable earned surplus be calculated
solely on that corporation's own financial condition," Universal Frozen Foods, 78 S.W.3d at 593,
we decline to extend the language of section 171.110(e) to allow the transfer of a business loss after
a merger. To do so would frustrate the revenue-raising purpose of franchise tax statutes. See
Rylander v. 3 Beall Bros. 3, Inc., 2 S.W.3d 562, 566-67 (Tex. App.--Austin 1999, pet. denied).

 Appellant next argues that section 171.110(e) permits the transfer of a business loss
after a merger, when read in tandem with section 5.06A(2) of the business corporation act. Tex. Bus.
Corp. Act Ann. § 5.06A(2). Section 5.06A(2) reads in part: in a merger, "all rights, title and
interests to all real estate and other property owned by each . . . entity that is a party to the merger
shall be allocated to and vested in one or more of the surviving or new . . . corporations." Id.
(emphasis added). While conceding that no Texas court has considered whether a business loss is
property, appellant contends that the phrase "other property" in section 5.06A(2) encompasses a
business loss. The Comptroller responds that reading section 5.06A(2) into section 171.110(e)
would frustrate the purpose of the franchise tax: to raise revenue. The Comptroller also argues that
the Comptroller has never applied the business corporation act to deduction statutes, although some
franchise tax code provisions reference the business corporation act. See Tex. Tax Code Ann.
§ 171.101 (West 2002) (referring to business corporation act for definition of "stated capital"); id.
§ 171.113 (West 2002) (employing business corporation act definition of "close corporation").

 There is generally an inference that omissions in a statute are intentional. Singer,
supra, § 47.25. Had the legislature intended for tax code section 171.110(e) to incorporate the
merger provisions of the business corporation act, it could have amended section 171.110(e) to refer
expressly to section 5.06A(2). "The legislative intent becomes more clear when we consider that
the legislature is presumed to enact a statute with the complete knowledge of existing law and with
reference to it." Upjohn Co., 38 S.W.3d at 608 (citing Acker v. Texas Water Comm'n, 790 S.W.2d
299, 301 (Tex. 1990)). Given the long-standing separate taxable entity policy in Texas and the
revenue-raising function of the franchise tax act, we find no basis for reading the merger provisions
of business corporation act section 5.06A(2) in tandem with the calculation of net taxable earned
surplus provisions of tax code section 171.110. Accordingly, we need not decide whether the phrase
"all real estate and other property" in section 5.06A(2) of the business corporation act includes
business losses.

 Appellant next contends that because section 171.110(e) "does not prohibit" the
transfer of a business loss after a merger, the Comptroller acted without statutory authority in
promulgating rule 3.555(g)(3), which states that a "corporation may not convey, assign, or transfer
a business loss to another entity including, but not limited to, by merger." 34 Tex. Admin. Code
§ 3.555(g)(3). Appellant urges that there is "no reason to exclude business losses because they are
based on the activities of a nonsurvivor before the merger." We disagree.

 In construing a statute, regardless of whether the statute is facially ambiguous, we
may give substantial weight to an administrative agency's contemporaneous interpretation, so long
as the interpretation is reasonable and does not contradict the plain language of the statute, especially
when the agency has special expertise in the area. Tex. Gov't Code Ann. § 311.023(6) (West 1998);
Dodd v. Meno, 870 S.W.2d 4, 7 (Tex. 1994); Upjohn Co., 38 S.W.3d at 609; see also Tex. Tax Code
Ann. § 111.002(a) (West 2002) (enabling the Comptroller to adopt rules that do not conflict with
state or federal law). Here, section 171.110(e) is silent on whether the survivor of a merger may
carry forward the business loss of its predecessor. Rule 3.555(g)(3) thus acts to clarify who may
deduct a business loss under section 171.110(e). Given the Comptroller's policy that corporations
are taxed as separate entities, it stands to reason that only the corporation incurring the business loss
may deduct that loss. Therefore, we conclude that the Comptroller acted within its statutory
authority in promulgating rule 3.555(g)(3).

 Appellant then argues that even if rule 3.555(g)(3) is valid, the rule does not apply
to appellant's refund claim because it was not adopted until February 16, 1996, after appellant's
1995 franchise tax return was due (but before appellant filed its amended return), and impermissibly
acts as a retroactive law. The rule states that "the provisions of this section apply to franchise tax
reports originally due after January 1, 1992," when the net taxable earned surplus provisions of the
franchise tax act were enacted. 21 Tex. Reg. 879 (1995) (codified at 34 Tex. Admin. Code
§ 3.555(a)) (Comptroller of Pub. Accounts).

 Retroactive application of a law is unconstitutional when it destroys or impairs vested
rights. Tex. Const. art. I, §16; Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212,
219 (Tex. 2002). The same principle applies to administrative rules. Grocers Supply Co. v. Sharp,
978 S.W.2d 638, 643 (Tex. App.--Austin 1998, pet. denied). A vested right is a property right,
which the constitution protects as any other property. Middleton v. Texas Power & Light Co., 185
S.W. 556, 560 (Tex. 1916). Courts generally presume that a statute will apply prospectively, Ex
parte Abell, 613 S.W.2d 255, 258 (Tex. 1981), but this general rule does not apply when a rule is
procedural or remedial. City of Tyler v. Likes, 962 S.W.2d 489, 502 (Tex. 1997). This is because
procedural or remedial statutes usually do not affect a vested right. Id.

 Entitled "Determination of Net Taxable Earned Surplus," section 171.110 sets forth
a framework for ascertaining net taxable earned surplus. Tex. Tax Code Ann. § 171.110. The title
of rule 3.555 is "Earned Surplus: Computation," and it sets forth details for calculating the net
taxable earned surplus figure. Given that rule 3.555 fleshes out the framework already established
in section 171.110, we view this rule as a procedural tool for calculating net taxable earned surplus. 
The rule logically applies to franchise tax reports due after January 1, 1992, because that is when the
net taxable earned surplus statutes went into effect.

 Furthermore, even if rule 3.555(g)(3) does not apply to appellant's amended 1995
franchise tax report, the summary judgment evidence showed that since late 1992, the Comptroller
had consistently interpreted section 171.110(e) as disallowing the transfer of a business loss. See,
e.g., Texas Comptroller of Public Accounts, STAR System No. 9308084L.2, at http://aixtcp.cpa.
state.tx.us/star (Dec. 2, 1992). The Comptroller's interpretation was thus publicly available to
appellant since late 1992.

 Appellant next contends that the 2001 amendment to section 171.110(e), which
expressly states that the survivor of a merger may not deduct its predecessor's business loss, does
not apply to appellant's amended 1995 return. Act of June 15, 2001, 77th Leg., R.S., ch.1275, § 2,
2001 Tex. Gen. Laws 3068 (codified at Tex. Tax Code Ann. § 171.110(e) (West 2002)). We agree. 
In the committee hearing in which this amendment was discussed, legislators expressed concern that
the amendment not affect pending litigation. See Hearings on Tex. S.B. 1689 Before the House
Comm. on Ways & Means, 77th Leg., R.S. 6, 8, 19, 40 (May 9, 2001). Nothing in the amendment
or its legislative history demonstrates that the amendment was to be applied retroactively.

 Finally, appellant proposes that Texas should discard its long-standing policy of
taxing corporations as separate entities in favor of the continuity of business doctrine--which the
federal government follows (3)--to allow the transfer of a business loss after a merger. This is for the
legislature, not the courts, to decide. Moreover, to read a transferable business loss into section
171.110(e) would circumvent both the revenue-raising purpose of franchise tax and the rule of
strictly construing a deduction against a claimant. Informing our decision is the Comptroller's
consistent interpretation since 1992 that a business loss is not transferable. (4) "The consistent
construction by an administrative agency charged with effectuating the policy of an enactment carries
very considerable weight." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47
Colum. L. Rev. 527, 543 (1947). The comptroller's interpretation aside, when amending section
171.110(e) in 2001, the legislature rejected the "Frazier amendment," which would have followed
the federal model in allowing the survivor of a merger to carry forward the nonsurvivor's business
loss. See Hearings on Tex. S.B. 1689 Before the House Comm. on Ways & Means, 77th Leg., R.S.
5 (May 9, 2001). The legislature in fact recognized the Comptroller's interpretation and the separate
taxable entity doctrine with its comment that "Subsection (e), section 171.110, Tax Code, as
amended by this Act, is a clarification of existing law and not a substantive change in law." Act of
June 15, 2001, 77th Leg., R.S., ch.1275, § 3, 2001 Tex. Gen. Laws 3068. In light of the legislature's
ratification of the Comptroller's long-standing policy, we decline to overturn the separate taxable
entity doctrine in Texas.

CONCLUSION


 We hold that appellant may not carry forward the business loss of the company with
which it merged, Oil & Gas, to offset its franchise tax liability for 1995. Section 171.110(e) of the 
tax code does not allow the transfer of a business loss, either on its own terms or when read with
section 5.06A(2) of the business corporation act. The Comptroller's letter rulings and interpretive
rule, 34 Texas Administrative Code section 3.555(g)(3), which disallow the transfer of a business
loss, do not contradict the plain meaning of section 171.110(e). Accordingly, the district court did
not err in granting the Comptroller's motion for summary judgment and denying appellant's motion
for summary judgment. We overrule both of appellant's issues and affirm the judgment of the
district court.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: July 11, 2003

1. We have substituted the current Attorney General and the current Comptroller as the
appropriate parties. See Tex. R. App. P. 7.2(a). The Comptroller and the Attorney General are
statutory defendants in tax protest suits. See Tex. Tax Code Ann. § 112.151(b) (West 2002). 
Because their interests do not diverge in this case, for convenience we will refer to them collectively
as "Comptroller."
2. We will refer to the current codes for convenience except when an amendment to a statute
is relevant to our analysis.
3. See 26 U.S.C.A. § 381 (West 1995) (allowing acquiring corporation to carry forward net
operating loss of transferor corporation after merger).
4. In its amicus curiae brief, Reliant Energy Gas Transmission Company argues that the
Comptroller's interpretation has been inconsistent. Appellant has never raised this argument;
therefore, it has not been preserved for our review. Tex. R. App. P. 33.1. Further, we may not
consider Reliant's exhibits in support of its argument because those documents were not before the
trial court when it ruled on the parties' motions for summary judgment.